11th Court of Appeals
Eastland, Texas
Opinion
 
Fabian Chavera
            Appellant
Vs.            No. 11-03-00404-CR -- Appeal from Howard County
State of Texas
            Appellee
 
            The jury convicted appellant, Fabian Chavera, of the offense of aggravated assault with a
deadly weapon. Appellant pleaded true to an enhancement paragraph in the indictment. The jury
assessed punishment at 30 years confinement and assessed a $5,000 fine. In two points of error,
appellant attacks the legal and factual sufficiency of the evidence. Specifically, appellant argues (1)
that the evidence was legally and factually insufficient to establish that he was the person who
committed the offense and (2) that the evidence was legally and factually insufficient to support the
deadly weapon finding. We affirm.
The Indictment
            The indictment charged appellant with intentionally, knowingly, or recklessly causing bodily
injury to Rigoberto Moran by stabbing him with a knife. The indictment also alleged that appellant
used or exhibited a deadly weapon – the knife – during the commission of the assault. See TEX.
PEN. CODE ANN. §§ 22.01(a)(1) & 22.02(a)(2) (Vernon Supp. 2004 - 2005).
Standards of Review
            In a legal sufficiency review, we view all of the evidence in the light most favorable to the
verdict and then determine whether a rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). In a factual
sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside
only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust or the contrary
evidence is so strong that the standard of proof of beyond a reasonable doubt could not have been
met. Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex.Cr.App.2004). We review the fact finder’s
weighing of the evidence and cannot substitute our judgment for that of the fact finder. Cain v.
State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
Due deference must be given to the fact finder’s determination, particularly concerning the weight
and credibility of the evidence. Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Jones v. State,
944 S.W.2d 642 (Tex.Cr.App.1996), cert. den’d, 522 U.S. 832 (1997).
The Evidence
            The State presented seven witnesses during the guilt/innocence phase of the trial: (1)
Rigoberto Moran; (2) Alicia Moran; (3) Arthur Dehlinger, a corporal with the Big Spring Police
Department; (4) Mike Elliott, an officer with the Big Spring Police Department; (5) Robert H.
Moore, an identification technician with the Big Spring Police Department; (6) Manuel Chavera; and
(7) Dr. Gary Arthur Nussey. Appellant presented three witnesses during the guilt/innocence phase
of the trial: (1) Marie Chavez; (2) Nick Ornelas; and (3) Marcos Chavera.
            Rigoberto Moran testified that he lived at 1612 Avion Street. He said that he got home after
11:00 p.m. on June 6, 2003. He drank a six-pack of beer and then, at about 12:30 a.m., walked to
Marie Chavez’s house to get more beer. Chavez lived at 1606 Avion. Moran asked Chavez to get
him a beer.
            Moran said that appellant was at Chavez’s house. Appellant asked Moran where Moran’s
wife, Alicia, was. Moran told him that she was at home asleep. It disturbed Moran that appellant
knew Alicia’s name but did not know Moran’s name. Moran said that he and appellant started
arguing and that appellant pulled out a knife from his pocket and unfolded it. Moran said that
Chavez brought him a malt liquor and separated him from appellant. Appellant had the knife in his
hand when Chavez was trying to separate them.
            Moran said that he drank half of the malt liquor and started walking home. He said that it
felt like appellant was right behind him with the knife. Moran said that he saw a bat on the ground
and picked it up. He swung the bat at appellant but did not hit him. He said that he swung the bat
at appellant because appellant had a knife. Moran testified that three guys jumped him, beat him,
and knocked him down to the ground. Moran testified that appellant was one of the people who
jumped him. Moran said that he told them “[t]hat’s enough” and that they stopped beating him.
Moran said that he got up and went to his house. Moran did not discover that he had been stabbed
until he got home. Moran said that he had been stabbed 12 times. Moran identified appellant in the
courtroom as the person he saw with the knife.
             Alicia Moran, Moran’s wife, testified that she was asleep at home when the incident
occurred. She said that Moran woke her up. He told her to call 9-1-1 and said that he had been
stabbed. She called 9-1-1 and then tried to stop the bleeding by wrapping Moran with towels. She
told Moran, “No, no, don’t die, don’t die.” She said that Moran was in the hospital in Lubbock for
six days after the incident. She said that they operated on him in Lubbock and that the doctors did
not think that Moran was going to live.
            Officer Arthur Dehlinger testified that, on June 7, 2003, at 2:25 a.m., he received a call to
go to 1612 Avion in reference to a stabbing victim. When he arrived, he saw Moran lying on the
porch. He said that Moran was covered with blood and was bleeding profusely. Officer Dehlinger
testified that Moran had multiple stab wounds. Moran had a severe stab wound to the left shoulder.
Officer Dehlinger said that blood was squirting from Moran’s left shoulder. Moran told Officer
Dehlinger that he was getting dizzy and weak. Officer Dehlinger asked Moran what had happened.
Moran said that “Fabian stabbed [him].” Officer Dehlinger said that an ambulance arrived and that
the emergency personnel immediately started working on Moran.
            Officer Mike Elliott testified that he got called to 1612 Avion at about 2:25 a.m. Officer
Dehlinger was there when he arrived. Officer Elliott saw a blood trail on the ground from 1612
Avion to 1606 Avion. He testified that he saw two males sitting on the porch at 1610 Avion. He
asked them if they had seen what had happened to their neighbor. One of the individuals responded,
“Yeah, we hit him with a baseball bat.” Officer Elliott said that he detained the two individuals.
They were appellant’s brothers, Marcos Chavera and Manuel Chavera. Marcos Chavera made the
statement about the baseball bat.
            Robert H. Moore testified that he photographed the scene. He photographed the blood trail
that went from 1606 Avion to 1612 Avion.
            Manuel Chavera testified that he lived at 1610 Avion. He said that, on June 6, 2003, at about
11:30 p.m., he and his brother, Marcos Chavera, were playing Play Station at 1610 Avion. He said
that Marcos left the house and came back about 10 or 15 minutes later. Manuel testified that Marcos
had a baseball bat in his hand and said that he had just gotten into it with Moran.
            Dr. Gary Arthur Nussey testified that he worked as an emergency room physician at the
Scenic Mountain Medical Center in Big Spring. He said that Moran arrived at the emergency room
by ambulance on June 7, 2003, at about 2:50 a.m. He said that Moran was covered with blood. Dr.
Nussey testified that Moran was suffering from hypovolemic shock, meaning that Moran had lost
so much blood that his blood pressure was low. Dr. Nussey said that hypovolemic shock will result
in the death of the patient if it is not adequately treated.
            Dr. Nussey testified that Moran had eight different wounds and that the wounds were
probably caused by a knife “about a half-inch or so in width.” Moran had two stab wounds to the
chest. Dr. Nussey thought that Moran might be suffering from a pnuemothorax in his left lung,
meaning that the knife went through the chest wall, poked the left lung, and caused the lung to
deflate. Dr. Nussey said that an X-ray suggested that Moran’s left lung was beginning to deflate. 
Dr. Nussey thought that the knife was at least two inches long, given that the knife penetrated the
left lung. He said that it was a life-threatening situation. Dr. Nussey said that, at one point, he
thought that Moran was going to die. Dr. Nussey placed a chest tube in both of Moran’s lungs. He
said that, at 4:40 a.m., Moran was taken to Lubbock by care flight.
            Marie Chavez testified that the altercation between Moran and appellant started in her
driveway. Chavez, Nick Ornelas, Moran, and appellant were present when the altercation started.
She said that Moran came to her house and asked for a beer. She said that she and Ornelas went
inside to get Moran a beer. She said that, when she came back outside, Moran was acting cocky
toward appellant. She said that Ornelas told Moran to leave and that Ornelas walked Moran home. 
Ornelas returned to Chavez’s house; and Chavez, Ornelas, and appellant talked in the driveway.
Chavez testified that Ornelas turned around and saw Moran running down the street with a baseball
bat in his hand. She testified that she saw Moran swing the bat at appellant. Moran was about 8 or
10 feet away from appellant when he swung the bat and did not hit appellant. Chavez said that she
and Ornelas ran inside the house because they were scared. They shut the door and did not watch
anything else. Chavez said that she never saw appellant with a knife.
            Nick Ornelas testified that he was at Chavez’s house during the altercation between Moran
and appellant. Ornelas testified that he walked Moran home and then he went back to Chavez’s
house. Ornelas said that he saw Moran running down the street carrying a bat. He said that Moran
swung the bat at appellant. Ornelas said that he did not see a knife in appellant’s hand.
            Marcos Chavera testified that, on the night of the incident, he was playing Play Station at his
brother Manuel’s house. He said that he walked outside and saw Moran holding appellant’s head
underwater in a kiddie swimming pool that was in the yard at 1606 Avion. He said that Moran was
on top of appellant and was holding a baseball bat. He ran over and knocked Moran off of appellant,
causing Moran to roll over and drop the bat. He said that Moran got up and came toward him.
Marcos said that he picked up the bat and swung it at Moran. He said that Moran ran home. He
testified that he never saw a knife in appellant’s hands.
Sufficiency of the Evidence
            In his first point of error, appellant argues that the evidence was legally and factually
insufficient to support his conviction. Specifically, appellant contends that the evidence was legally
and factually insufficient to establish that he was the person who committed the offense. The jury
heard testimony that Moran and appellant had an altercation. Moran testified that appellant had a
knife in his hand during the altercation. He also testified that appellant was one of the individuals
who jumped him. After seeing appellant with the knife, Moran received at least eight stab wounds. 
Moran told Officer Dehlinger that “Fabian stabbed [him].” During his testimony, Moran identified
appellant as the individual who was carrying the knife. There was no evidence that anyone other
than appellant had a knife. 
            The evidence was legally and factually sufficient to establish that appellant was the person
who committed the offense. Viewing the evidence in the light most favorable to the verdict, the jury
could have concluded that appellant was the individual who stabbed Moran with the knife. Viewing
the evidence in a neutral light, the evidence was not so weak that the verdict was clearly wrong and
manifestly unjust. Furthermore, the contrary evidence was not so strong that the “beyond a
reasonable doubt” standard could not have been met. Appellant’s first point of error is overruled.
            In his second point of error, appellant argues that the evidence was legally and factually
insufficient to support the deadly weapon finding. Section 22.02(a)(2) provides that a person
commits the offense of aggravated assault if he uses or exhibits a deadly weapon during the
commission of an assault. A deadly weapon is defined as “anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.” TEX. PEN. CODE ANN. §
1.07(17)(B) (Vernon Supp. 2004 - 2005). A knife is not a deadly weapon per se, and it is the manner
of or intended manner of use or exhibition of a knife capable of causing death or serious bodily
injury that makes it a deadly weapon pursuant to Sections 1.07(17)(B) and 22.02(a)(2). McCain v.
State, 22 S.W.3d 497 (Tex.Cr.App.2000); In re L.F.L.T.B., 137 S.W.3d 856, 860 (Tex.App. -
Eastland 2004, no pet’n). It is the use or the exhibition of a deadly weapon, not the identification
or the name of a particular type of knife, that is an element of aggravated assault. Section
22.02(a)(2); In re L.F.L.T.B., supra.
            The record establishes that the knife used in the offense was a deadly weapon. Dr. Nussey
testified that Moran’s injuries were serious and could have caused death. Dr. Nussey testified that
it was a life-threatening situation and that, at one point, he thought that Moran was going to die. The
evidence was legally and factually sufficient to establish that the knife in the manner of its use or
intended use was capable of causing death or serious bodily injury. See Section 22.02(a)(2); McCain
v. State, supra; In re L.F.L.T.B., supra. Thus, the evidence was legally and factually sufficient to
support the finding that the knife was a deadly weapon. Appellant’s second point of error is
overruled.
This Court’s Ruling
            The judgment of the trial court is affirmed.
 
                                                                                                TERRY McCALL
April 14, 2005                                                                        JUSTICE
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.